NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAMELA MILLER, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | Civ. No. 18-13624 |
| v. | **OPINION** |
| I.C. SYSTEM, INC., | |
| Defendant. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motions for Summary Judgment filed by Plaintiff Pamela Miller ("Plaintiff") (ECF No. 45) and Defendant I.C. System, Inc. ("Defendant") (ECF No. 44) on April 26, 2021. The Court has decided the Motions based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Plaintiff's Motion (ECF No. 45) is GRANTED IN PART and DENIED IN PART; and Defendant's Motion (ECF No. 44) is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.      Factual Background

A.      *The Parties*

This is a Fair Debt Collection Practices Act ("FDCPA") action alleging fraudulent and deceptive debt collection practices by Defendant. (Compl. ¶ 1, ECF No. 1.)

Plaintiff is an individual residing in Somerset County who rented a self-storage unit located in North Brunswick, New Jersey beginning around January 16, 2017. (Compl. ¶ 7; Pl.'s SUMF ¶ 1, ECF No. 45-4.) She rented the storage unit from an entity called "Uncle Bob's Self Storage." (Miller's Dep., Def.'s Ex. 1, ECF No. 44-2.) In July 2016, before Plaintiff rented the unit, Uncle Bob's Self Storage's parent company, "Sovran Self Storage, Inc.," purchased another storage company, "Life Storage," and its 84 self-storage facilities.[1] (Timeline at 68, Ex. I to Hersh Decl., ECF No. 45-2.)[2] Starting in September 2016, Uncle Bob's Self Storage began a "brand transformation," (*id.*) where it changed its name to Life Storage and placed "new Life Storage signs" at all of the Uncle Bob's Self Storage locations. (Life Storage Website at 1–2, Ex. J to Hersh Decl., ECF No. 45-2.) This "brand transformation" concluded by March 2017. (Timeline at 68.)

Defendant is a Minnesota corporation that "collect[s] accounts on behalf of creditors." (Dove's Dep. at 27:24–25, Ex. A to Hersh Decl., ECF No. 45-2.) Defendant is a "debt collector" that "attempt[ed] to collect a debt" in relation to outstanding payments that Plaintiff owed regarding the storage unit rental. (Collection Letter at 1, Ex. B to Miller Decl., ECF No. 45-3.)

B.    *Plaintiff's Rental of the Self-Storage Unit*

On January 16, 2017, Plaintiff entered into an agreement to rent a storage unit located at "Uncle Bob's Self Storage #728" (the "Rental Agreement"). (Rental Agreement at 1, 3, Ex. A to Miller Decl., ECF No. 45-3.) Plaintiff used the unit for the storage of "household goods/furniture" (Lien Sale Notice at 2, Ex. D to Hersh Decl., ECF No. 45-2). The first page of

---

[1] Life Storage LP and Life Storage, Inc. are operated as a single enterprise (hereinafter referred to as "Life Storage"). (*See* Form 10-K at 2, Ex. I to Hersh Decl., ECF No. 45-2.)
[2] The page numbers to which the Court refers are the CM/ECF page numbers.

the Rental Agreement included a trademark for Uncle Bob's Self Storage, stated the location of the rental as "Uncle Bob's Self Storage #728, 1555 Livingston Ave, North Brunswick, NJ 08902," and stated "[v]isit us at unclebobs.com. (Rental Agreement at 1.) The third page of the Rental Agreement listed the "owner" of the storage unit as "SH 726 LLC, SH 727 LLC, SH 728 LLC or SH 729-744 LLC," and was signed by an "authorized agent" of "Life Storage Solutions, LLC." (*Id.* at 3.)

When Plaintiff entered into the Rental Agreement, she understood the rental to be with Uncle Bob's Self Storage and had never heard the term Life Storage. (Miller's Dep. 42:15–23.)

Plaintiff was to pay $59.00 per month, plus sales tax. (Rental Agreement ¶ 2.a.) The Rental Agreement allowed the owner to "pursue civil remedies against Customer [Plaintiff] for collection of past due amounts," and required the customer to cover "reasonable costs incurred by Owner in enforcing this Rental Agreement, including but not limited to court costs, collection costs and attorneys' fees." (*Id.* ¶ 2.f.)

At some point after she rented the storage unit, Plaintiff became "delinquent" in her payments and Life Storage began calling her about the unit. (Def.'s SUMF ¶¶ 2–3, Pl.'s Response to Def.'s SUMF ¶¶ 2–3.) At the time Plaintiff received those calls, she had never heard of Life Storage. (Miller's Dep. at 42:7–14.) She later understood that Uncle Bob's Self Storage became Life Storage, through a "change[] [in] ownership or something like that." (*Id.* at 42:1–6.)

On July 13, 2017, Plaintiff received a "Lien Sale Notice" from Life Storage, which itemized the "unpaid balance" of Plaintiff's account and notified her that her property would be sold at public auction if she failed to pay in fifteen (15) days. (Lien Sale Notice at 1.) By August 22, 2017, these items were sold. (Report on Vacating at 2, Ex. E to Hersh Decl., ECF No. 45-2.)

C.      *Defendant's Contract with Life Storage*

Around August 22, 2017, Life Storage contacted Defendant to assist with collecting

Plaintiff's debt. (Collection Submittal Form at 1, Ex. F to Hersh Decl., ECF No. 45-2.) It

submitted a "Collection Submittal Form" dated August 22, 2017 to Defendant, seeking collection

efforts to recover $408.12 for the storage unit and associated costs. (*See id.*)

Around September 5, 2017, Life Storage "referred Plaintiff's delinquent account" to

Defendant for "collection purposes." (Dove Decl. ¶ 6, Def.'s Ex. 2, ECF No. 44-3.) At the time

of referral, Life Storage "transmitted certain information relating to Plaintiff's account to

[Defendant] including, inter alia, Plaintiff's name [and] contact information, and identified a

delinquent balance of $408.11," which consisted of "$309.18 in principal and a $98.93 collection

charge." (*Id.* ¶ 7.) Life Storage and Defendant entered into a contract, the "Premier Collect

Agreement," to govern the Defendant's debt collection services and Life Storage's payment

thereof. (Premier Collect Agreement, Ex. B to Hersh Decl., ECF No. 45-2.)

Defendant considered Life Storage a "client" of Defendant's debt collecting services.

(*See* Def.'s SUMF ¶¶ 25–30.) When Defendant collected a debt for a client, the client would pay

Defendant based on a percentage of the money that Defendant collected. (Dove's Dep. at 62:4–

12; Pl.'s SUMF ¶ 19; Def.'s Response to Pl.'s SUMF ¶ 19, ECF No. 51-1.) The Premier Collect

Agreement provided that Defendant would collect 32% of the money it collected. (*See* Premier

Collect Agreement ¶ 2.)

Under the Premier Collect Agreement, Life Storage would "provide accurate information

on each account" to Defendant, and only refer accounts "that are validly due and owing by the

debtor indicated," including "the principal [and] any charges added to the principal." (Premier

Collect Agreement ¶ 4.) If a client wanted Defendant to collect a "collection fee" in addition to

4

the principal and additional charges, Defendant would "review[] the client's contract with its customers to determine if the contract contains a collection fee provision." (Def.'s SUMF ¶ 25.) If the contract contained a collection fee provision, Defendant would "agree to add [the] collection fee, as long as the collection fee [did] not exceed the percentage the client ha[d] agreed to pay [Defendant] in the client's contract with [Defendant.]" (*Id.* ¶ 26.) Defendant also asserts that it "relie[d] on its clients to determine [their own] legal rights regarding [their] contracts with their customers." (*Id.* ¶ 28.)

Here, Life Storage sought a collection charge of $98.94. (*See* Collection Submittal Form at 1.) On review of the Rental Agreement, Defendant determined that there was a collection fee provision stating that Plaintiff "shall be responsible for reasonable costs incurred by Owner in enforcing this Rental Agreement." (*See id.* ¶ 29.) Thus, Defendant agreed to add the collection fee, but lowered it from $98.94 to $98.93 so it did not exceed the 32% that Life Storage agreed to pay Defendant under the Premier Collect Agreement. (*Id.* ¶ 30; Premier Collect Agreement at 1.)

D.   *Defendant's Collection Efforts*

Before Defendant began its debt collection efforts from Plaintiff, it conducted certain procedures, including: "verifying [] personal identifying information, performing a cellphone scrub to avoid potential issues with the Telephone Consumer Protection Act, perform[ing] a bankruptcy scrub to avoid violation of any bankruptcy stays, and perform[ing] a search using the national change of address database [] to ensure its mailings reached the intended recipient." (Dove Decl. ¶ 9.) Defendant determined the information that Life Storage provided "was likely valid and began collection efforts." (*Id.* ¶ 10.)

On September 6, 2017, Defendant sent its "initial collection letter to Plaintiff" (the "Collection Letter"). (Def.'s SUMF ¶ 9; Collection Letter, Ex. B to Miller's Decl., ECF No. 45-

3.) The Collection Letter contained a header with Defendant's name and address and an "Account Summary" in the upper righthand corner. (Collection Letter.) The Account Summary states the "Creditor" as "0728 Uncle Bobs Self Storage," the "Principal Due" as $309.18, the "Collection Charge Due" as $98.93, and the total "BALANCE DUE" of $408.11. (*Id.*)

The Collection Letter stated that Plaintiff's "delinquent account has been turned over to this collection agency" and "account information is scheduled to be reported to the national credit reporting agencies in [her] creditor's name." (*Id.*) The Collection Letter directed Plaintiff to "tear off the bottom portion of this letter and return it with [her] payment." (*Id.*) In the final sentence of the Collection Letter, Defendant identified itself as a "debt collector attempting to collect a debt" and states that "any information obtained will be used for that purpose." (*Id.*) The bottom of the Collection Letter stated that, unless Plaintiff "notif[ies] this [Defendant's] office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, [Defendant] will assume this debt is valid." (*Id.*)

When Plaintiff received the Collection Letter, she was not confused about which account it referred. (Miller's Dep. 86:16–19.) She did not dispute the validity of the debt to Defendant or anyone else. (*Id.* at 85:18–86:3.)

The parties dispute whether Defendant reported Plaintiff's account to the national consumer reporting agencies (the "NCRAs"). According to Defendant, at the time the Collection Letter was sent, Defendant planned to report Plaintiff's account, and did report Plaintiff's account, on or about November 12, 2017. (Dove Decl. ¶¶ 16–17.) Plaintiff claims that she "generally review[s] her credit reports annually in May of each year and ha[s] done so for several years," and she has not seen a debt on her credit reports owed to 0728 Uncle Bob's Self-Storage. (Miller Decl. ¶ 19, ECF No. 45-3.)

6

II.     **Procedural Background**

On September 6, 2018, Plaintiff filed the Complaint, alleging that Defendant violated 15

U.S.C. §§ 1692d, 1692e, 1692f, and 1692g of the FDCPA in connection to the Collection Letter

it sent to Plaintiff. (*See* Compl. ¶¶ 43–54.) On April 26, 2021, both Plaintiff and Defendant filed

Motions for Summary Judgment (ECF Nos. 44, 45.) On June 14, 2021, both Plaintiff and

Defendant opposed each other's Motions for Summary Judgment. (ECF Nos. 51, 52.) On July 6,

2021, both Plaintiff and Defendant filed replies. (ECF Nos. 56, 57.)

## <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it

could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of

the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When deciding the existence of a genuine dispute of material fact, the Court must determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

A party must support the assertion that a fact is or is not "genuinely disputed" by (A)

citing to materials in the record, such as "depositions, documents . . . , affidavits or declarations,

stipulations . . . , admissions, interrogatory answers, or other materials," or (B) "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56. Thus, a party

"opposing a properly supported motion for summary judgment 'may not rest upon the mere

allegations or denials of his pleadings,'" but rather, set forth specific facts that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## DISCUSSION

### I.    The Fair Debt Collection Practices Act

The FDCPA prohibits debt collectors from making false or misleading representations or engaging in abusive or unfair debt collection practices, and imposes civil liability on debt collectors for certain prohibited practices. 15 U.S.C. § 1692(e); *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). Because the FDCPA is a "remedial statute," courts "construe its language broadly so as to effect its purpose" and assess communications to debtors from the perspective of the "least sophisticated debtor." *Lesher v. L. Offs. Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011).[3]

The "least sophisticated debtor standard" is a "low standard," intended to "protect all consumers, the gullible as well as the shrewd." *Id.* (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). This standard, however, also "preserv[es] a quotient of reasonableness

---

[3] Courts refer to the "least sophisticated debtor" and the "least sophisticated consumer" interchangeably. *See, e.g.*, *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 n.1 (3d Cir. 2006).

and presum[es] a basic level of understanding." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000) (internal quotation marks and citation omitted). Thus, it "prevents liability for bizarre or idiosyncratic interpretations of collection notices," *id.* at 354, and assumes that "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety," *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).

The parties dispute the second and fourth elements. Regarding the second element, Defendant argues that "Plaintiff has failed to establish the necessary element that [Defendant] is a 'debt collector.'" (Def.'s Opp'n at 10, ECF No. 51.) A "debt collector" is "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Here, there is no genuine dispute that Defendant is a "debt collector." Defendant's Chief Compliance Officer and Chief Counsel, Michelle Dove ("Dove"), testified that Defendant's "business" is "collect[ing] accounts on behalf of creditors" and that Defendant "collect[s] more consumer than commercial." (Dove's Dep. at 27:15–28:11.) Defendant identifies itself as "a debt collector attempting to collect a debt" in the Collection Letter and admits in its Answer that it is "in the debt collection business and is sometimes considered a 'debt collector' under the FDCPA." (Collection Letter; Answer ¶ 9, ECF No. 4). Further, the money owed by Plaintiff is

9

for the rental of a storage unit containing "household goods/furniture," (Lien Sale Notice at 2), which satisfies the statutory definition for "debt." *See* 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which . . . the subject of the transaction [is] primarily for personal, family, or household purposes"). Defendant has not set forth specific facts to show a genuine dispute of this fact, and rather, rests on "mere . . . denials" that Plaintiff's evidence is sufficient. *See Anderson*, 477 U.S. at 248. Thus, the Court finds that Plaintiff has established that Defendant is a debt collector.

Regarding the fourth element, Plaintiff argues that the Collection Letter violates various provisions of the FDCPA by (1) "fail[ing] to identify the name of the current creditor at the time the Collection Letter was sent;" (2) seeking "to collect $98.93 in collection charges in addition to the principal due amount of $309.18;" and (3) "threaten[ing] credit reporting of Plaintiff's delinquent self-storage unit balance to the national credit reporting agencies." (Pl.'s Br. at 8, 16, 27, ECF No. 45-1.) The Court addresses these arguments in turn.

## II.    The Identification of "0728 Uncle Bobs Self Storage" as the Creditor

Plaintiff argues that the Collection Letter inaccurately listed "0728 Uncle Bobs Self Storage" as the creditor. According to Plaintiff, the identity of the creditor is either the listed "owner" in the Rental Agreement, "SH 726 LLC, SH 727 LLC, SH 728 LLC or SH 729-744 LLC," or Life Storage. (Pl.'s Br. at 15; Pl.'s Opp'n at 23, ECF No. 52.) Defendant argues that "0728 Uncle Bob's Self Storage" is the accurate creditor because Uncle Bob's Self-Storage was the "well-known name of the creditor" when Plaintiff rented the unit. (Def.'s SUMF ¶ 23.)

Plaintiff moves for summary judgment on the grounds that the "misidentification" of the creditor as "0728 Uncle Bob's Self Storage" violates §§ 1692g(a)(2) and 1692e. (Pl.'s Br. at 10.)

10

Defendant moves for summary judgment, arguing that Collection Letter accurately conveyed the creditor and thus, complies with §§ 1692g(a)(2) and 1692e. (Def.'s Br. at 17–24.)

     A.    *Section 1692g(a)(2)*

Section 1692g requires a debt collector to send a written collection notice that states "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). The creditor's identity must be "conveyed effectively" to the "least sophisticated debtor." *Gross v. Lyons Doughty & Veldhuis, P.C.*, 779 F. App'x 864, 866 (3d Cir. 2019) (quoting *Wilson*, 225 F.3d at 354); *Devito v. Zucker, Goldberg & Ackerman, LLC*, 908 F. Supp. 2d 564, 570 (D.N.J. 2012). This is an objective standard; thus, a "specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419. The Court may make this determination as a matter of law. *See Gross*, 779 F. App'x at 866.

When identifying the creditor, the debt collection notice must "be clear enough that a naïve consumer comes away from the notice understanding the identi[t]y of the creditor." *Rodriguez v. Gem Recovery Sys., LLC*, 2021 WL 3030334, at *9 (D.N.J. July 19, 2021) (quoting *Leonard v. Zwicker & Assocs., PC*, 713 Fed. Appx. 879, 882–83 (11th Cir. 2017) (internal quotation marks omitted)). The least sophisticated consumer must be able to "recognize the name" and "understand, from that name, with whom the debt originated." *Id.* (quoting *Iadevaio v. LTD Financial Services, L.P.*, 2019 WL 4094922 at *6 (E.D.N.Y. Aug. 29, 2019)); *see also Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (noting that a creditor may use "any name that it has used from the inception of the credit relation").

Additionally, "nothing in the FDCPA expressly requires that debt collectors use a creditor's full business name." *Gem Recovery Sys., LLC*, 2021 WL 3030334, at *9. Rather a "naïve consumer . . . may be more familiar with a commonly used trade name." *Id.* (quoting

*Zwicker*, 713 Fed. Appx. at 883) Thus, a collection notice may identify creditors by the name

under which they usually "transact business or a commonly-used acronym." *Id.* (citing to Federal

Trade Commission, Statements of General Policy or Interpretation, Staff Commentary on the

Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (1988)); *see also Rodriguez v. Certified*

*Credit & Collection Bureau*, 2019 WL 4268062, at *3 (D.N.J. Sept. 9, 2019) (approving

collection notices listing a single entity that the consumer would recognize, rather than "multiple

parties" or "a potentially confusing assignment"); *Hughes v. Certified Credit & Collection*

*Bureau*, 2021 WL 4992628, at *2 (D.N.J. Oct. 27, 2021).

   Here, by listing the creditor as "0728 Uncle Bob's Self-Storage," the Collection Letter

"effectively conveys" the identity of the creditor as the least sophisticated debtor would have

understood from the Rental Agreement. *See Gross*, 779 F. App'x at 866. The Rental Agreement

includes three distinct references to Uncle Bob's Self Storage: (1) the trademark logo; (2) the

address of "Uncle Bob's Self Storage #728"; and (3) a notation to "[v]isit us at unclebobs.com."

(Rental Agreement at 1.) These references show that, when Plaintiff signed the Rental

Agreement, the rental location "transact[ed] business" as Uncle Bob's Self Storage. *See Gem*

*Recovery Sys., LLC*, 2021 WL 3030334, at *9. Thus, by identifying the creditor as Uncle Bob's

Self Storage in the Collection Letter, a "naïve consumer" would "come[] away from the notice

understanding the identi[t]y of the creditor." *See id.*

   Plaintiff argues that the Collection Letter inaccurately identifies the creditor because the

Rental Agreement "suggest[s] Life Storage is the current creditor, if not SH XXX LLC." (Pl.'s

Br. at 15.) The Rental Agreement refers to the "owner" as "SH 726 LLC, SH 727 LLC, SH 728

LLC, or SH 729-744 LLC" and is signed by "Life Storage Solutions LLC, its authorized agent."

(Rental Agreement ¶ 1.) Plaintiff's interpretation would require the least sophisticated debtor to

read fine print over the larger, more obvious textual references to Uncle Bob's Self Storage. Because the least sophisticated debtor standard avoids "bizarre or idiosyncratic interpretations," the Court rejects this argument. *See Wilson*, 225 F.3d at 354–55.

Plaintiff also argues that three documents indicate that Life Storage is the true creditor: (1) the Lien Sale Notice; (2) the Report on Vacating indicating that Plaintiff's stored items had been sold; and (3) the Collection Submittal Form. None of these documents occurred near the "inception of the credit relation," *see Maguire*, 147 F.3d at 235, and thus, they do not convey "with whom the debt originated," *see Gem Recovery Sys., LLC*, 2021 WL 3030334, at *9. Further, the latter two documents were not viewed by the debtor, and thus are irrelevant to how the least sophisticated debtor would interpret the creditor's identity.

B.      *Sections 1692e(10), (14)*

Section 1692e prevents a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" and the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." *Id.* §§ 1692e(10), (14). A communication is "deceptive" if, from the perspective of the least sophisticated debtor, "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008). Section 1692e requires the false statement to be material, and "preclude[es] only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." *Jensen*, 791 F.3d at 421–22.

Plaintiff argues that the Collection Letter violates § 1692e because the identification of

13

"0728 Uncle Bob's Self Storage" is a "false, deceptive, or misleading statement." (Pl.'s Reply at 7–8; ECF No. 57.) This argument fails because the least sophisticated debtor would understand the identity of the creditor listed in the Collection Letter. *See* Discussion *supra* at II.A.

In sum, based on the Rental Agreement's multiple references of Uncle Bob's Self Storage, the Collection Letter accurately conveys the creditor by listing it as "0728 Uncle Bob's Self Storage." The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment on this issue.

**III.    The $98.93 in "Collection Costs"**

Both parties move for summary judgment regarding the Collection Letter's seeking the $98.93 "Collection Charge" (the "collection charge") in addition to the $309.18 "Principal Due." Plaintiff argues that the inclusion of the collection charge or at least, the failure to itemize this charge, violates §§ 1692e, 1692f(1), and 1692g(a)(1). Defendant argues that it is not liable for seeking or failing to itemize the collection charge because the "bona fide error" defense applies. 15 U.S.C. § 1692k(c).[4]

A.    *Sections 1692e(2), 1692f(1), and 1692g(a)(1)*

Section 1692e(2) prevents a debt collector from using a false representation of "the

---

[4] Defendant also argues that it should not be liable for including the collection charge in the Collection Letter because it had the right to (1) rely on its client as to the validity of the amount of debt and (2) believe the debt was valid because Plaintiff never disputed the collection charge. (Def.'s Br. at 13.) The Court rejects both of these arguments. The Third Circuit has determined that "[t]he FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation," and thus, Defendant's lack of knowledge of the validity of the debt is irrelevant. *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011); *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 248 (3d Cir. 2014) (finding that a "consumer is not required to seek validation of a debt he or she believes is inaccurately described in a debt communication as a prerequisite to filing suit" and thus, a debt collector cannot "avoid liability for [a] false communication simply because a request to validate its content was not made").

14

character, amount, or legal status of any debt; or any services rendered or compensation which

may be lawfully received by any debt collector for the collection of a debt." *Id.* § 1692e(2).

Section 1692f prohibits a debt collector from using unfair or unconscionable means to collect

any debt, including "[t]he collection of any amount (including any interest, fee, charge, or

expense incidental to the principal obligation) unless such amount is expressly authorized by the

agreement creating the debt or permitted by law." *Id.* § 1692f(1). Section 1692g requires the

initial written communication to the consumer to accurately identify the "amount of debt"

allegedly owed. *Id.* § 1692g(a)(1).

1.    <u>Inclusion of the $98.93 "Collection Charge"</u>

New Jersey courts have addressed whether a debt collection letter that includes a

collection charge violates the FDCPA. If the "agreement creating the debt" requires the debtor to

pay the "costs incurred" in the debt collection efforts, such costs must "ha[ve] actually been

incurred as of the date [the plaintiffs] received [their] [collection] [l]etters." *Carney v. Goldman*,

2018 U.S. Dist. LEXIS 90424, at *23 (D.N.J. May 30, 2018) (quoting 15 U.S.C. §§ 1692f(1))

(finding that a defendant debt collector's letters that sought to collect attorney's fees "not

incurred when the debt letter was sent" raised genuine issue whether FDCPA violation occurred).

Similarly, in *Genova v. IC Systems*, a plaintiff entered into a loan agreement with a

creditor that provided that the plaintiff is "responsible to pay . . . any fees incurred should [her]

account require collection action (E.G. late fees, collection agency, court or attorney costs." 2017

U.S. Dist. LEXIS 80046, at *12 (D.N.J. May 25, 2017). The debt collector would collect a 17%

contingent fee "if it successfully collected on the debt." *Id.* at *1. In the collection letter, the debt

collector included both the "principal due" and a "collection charge due." *Id.* In denying a

motion to dismiss, the court determined that "because the [loan agreement] by its terms only

15

required the consumer to pay any fees 'incurred,' Defendant was not 'expressly authorized' to seek the Collection Charge, which represented an estimate of costs that had not yet been incurred or earned." *Id.* at *12–13; *see also Hernandez v. Miracle Fin., Inc.*, 2011 U.S. Dist. LEXIS 144356, at *10 (D.N.J. Dec. 13, 2011) (finding that, "under the least sophisticated debtor standard, [the] [p]laintiff state[d] a claim sufficient to state a plausible right to relief regarding the inclusion of a contingent fee not yet charged to which [the debt collector] was only entitled in the event of successful collection"); *Ardino v. Solomon & Solomon, P.C.*, 2014 U.S. Dist. LEXIS 8638, at *18 (D.N.J. Jan. 23, 2014) (finding that plaintiffs stated a claim under §§ 1692e(2)(A), f(1) because they alleged that, under the relevant agreement, contingent attorney's fees "were not due until actually incurred," and the collection letter "did not reflect this").

Here, Defendant takes 32% of the amount it collects and thus, is paid on a contingency fee basis. (*See* Def.'s SUMF ¶¶ 26, 30; Dove's Dep. at 62:4–12; Premier Collect Agreement.) Under the Rental Agreement, Plaintiff is responsible for "reasonable costs *incurred* by [the creditor]." (Rental Agreement ¶ 2.f.) Because "collection fees" must be actually "incurred" before a debt collector may collect them, the Collection Letter's inclusion of the $98.93 collection fees violates the FDCPA unless those costs were actually incurred when Defendant sent the Collection Letter. *See Carney*, 2018 U.S. Dist. LEXIS 90424, at *23; *Genova*, 2017 U.S. Dist. LEXIS 80046, at *12; *Hernandez*, 2011 U.S. Dist. LEXIS 144356, at *10; *Ardino*, 2014 U.S. Dist. LEXIS 8638, at *18.

Defendant argues that "there is no evidence of what costs were 'incurred' by Life Storage or whether these costs meet or exceed the amount of the collection fee at issue." (Def.'s Reply at 2, ECF No. 56.) Defendant cites to collection efforts made by Life Storage before Defendant sent the Collection Letter, *e.g.*, the Lien Sale Notice and the Report on Vacating Customer, to show

16

collection costs already "incurred." (*Id.*; Lien Sale Notice; Report on Vacating Customer.)

The Court finds that Defendant has sufficiently raised a genuine issue of fact as to whether $98.93 collection charge was, in fact, "incurred" when Defendant sent the Collection Letter. Defendant points to actual collection efforts undertaken by Life Storage. (Lien Sale Notice; Report on Vacating Customer.) Because Plaintiff has failed to establish an absence of a genuinely disputed fact on this issue, the Court denies Plaintiff's Motion for Summary Judgment regarding the inclusion of the collection charge.

2.    Itemization of the $98.93

Plaintiff also argues that the Collection Letter's failure to itemize the $98.93 collection charge violates §§ 1692e and 1692f. (Pl.'s Br. at 24–27.) Plaintiff cites to cases holding that a collection letter should itemize the principal debt from the collection charge. *See, e.g.*, *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (finding that a plaintiff stated a claim under the FDCPA where the collection letter "listed an account balance that exceeded the principal obligation of $266.48," but did not explain that it was "seeking attorney's fees of $250"); *LaMonaca v. FirstStates Fin. Servs. Corp.*, 2019 U.S. Dist. LEXIS 107444, at *2 (D.N.J. June 26, 2019) (finding that a plaintiff stated a § 1692e violation when the collection letter failed to separate the principal debt from the collection fee).

Here, the Collection Letter separated the principal debt from the collection charge. (*See* Collection Letter.) Because the cited cases do not suggest that Defendant also needed to itemize within the collection charge, the Court rejects Plaintiff's argument.

In sum, the Court denies Plaintiff's Motion for Summary Judgment as to whether the Collection Letter violates §§ 1692e(2), 1692f(1), and 1692g(a)(1) by seeking the $98.93 collection charge. Because the Court finds that the collection charge itself does not need to be

17

itemized, the only remaining triable issue is whether the $98.93 collection charge was "already incurred" when Defendant sent the Collection Letter.

> B.    *Section 1692k(c)*

Section 1692k(c) provides a safe harbor for debt collectors who show, "by a preponderance of the evidence[,] that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error." 15 U.S.C. § 1692k(c). To avail itself to the "bona fide error" defense, a debt collector must show: "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." *See Beck v. Maximus, Inc.*, 457 F.3d 291, 297–98 (3d Cir. 2006).

"A debt collector bears the burden of proving each element of the defense by a preponderance of the evidence." *Id.* "The first prong of this defense is a subjective test that requires a credibility determination concerning the debt collector's assertions that the ensuing FDCPA violation was unintentional." *Agostino v. Quest Diagnostics, Inc.*, 2011 WL 5410667, at *4 (D.N.J. Nov. 3, 2011) (citing *Johnson v. Riddle*, 443 F.3d 723, 728–29 (10th Cir. 2006)); *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 427 n.14 (D.N.J. 2013).

"The second and third prongs of the defense are objective and require an inquiry into whether any precautions were actually implemented, and whether such precautions 'were reasonably adapted to avoid the specific error at issue.'" *Agostino*, 2011 WL 5410667, at *4 (quoting *Johnson*, 443 F.3d at 729). "A mistaken legal interpretation of the FDCPA does not qualify as a bona fide error." *Gebhardt v. LJ Ross Assocs., Inc.*, 2017 WL 2562106, at *3 (D.N.J. June 12, 2017) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 582–83 (2010)); *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 393 (3d Cir. 2017). Rather, bona

18

fide errors "must result from 'clerical or factual mistakes,' not mistakes of law." *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 282 (3d Cir. 2019) (quoting *NRA Grp., LLC*, 861 F.3d at 394).

Defendant argues that, even if it mistakenly included the collection charge, the bona fide error defense applies. (Def.'s Br. at 8, Def.'s Opp'n at 18.) The Court notes at the outset that the applicability of this defense depends on the genuinely disputed facts discussed *supra* III.A: whether Defendant committed an "error" by seeking the $98.93 collection charge depends on whether that charge was, in fact, incurred when Defendant sent the Collection Letter. If so, there was no violation of the FDCPA and thus, the bona fide error defense is unnecessary.

If there was an error, Defendant has not demonstrated an absence of genuinely disputed facts as to whether the bona fide error defense applies. First, Defendant has not set out sufficient evidence to demonstrate that the alleged error was unintentional. Defendant asserts that it "performed certain standard procedures to review the account to avoid certain pitfalls and potential violations of the law." (Def.'s SUMF ¶ 6.) However, the intent prong is a "subjective test that requires a credibility determination." *Agostino*, 2011 WL 5410667, at *4. Because the Court "may not make credibility determinations or engage in any weighing of the evidence" on summary judgment, *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004), whether Defendant intended to violate the FDCPA is a factual issue for a jury to decide.

Second, Defendant has not demonstrated that the error was bona fide. Defendant does not assert evidence that the inclusion of the collection fees was a "clerical" or "factual" mistake. *See Dautrich*, 2018 WL 3201786, at *9 (finding that an error originating from a "computer program glitch" constituted a "bona fide error").

Third, Defendant does not establish that it has "reasonable" procedures in place that are "designed to prevent it from attempting to collect collection charges unless the client contract

19

contains a provision allowing collection charges to be assessed." (Def.'s Br. at 13.) "While '[t]he bona fide error defense does not require debt collectors to take every conceivable precaution to avoid errors,' debt collectors must take reasonable precautions to do so." *Hassine v. Simon's Agency, Inc.*, 2020 WL 3481815, at *5 (D.N.J. June 26, 2020). Typically, the "application of the bona fide error defense is . . . a question reserved for the jury, [but] a court may grant summary judgment where there is no way for the [d]efendant to succeed on the defense." *Id.* at *6.

To show the existence of "reasonable procedures," a defendant debt collector must provide "more than a mere assertion to that effect." *Id.* (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008)). "The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Id.* (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008)) (finding that two-page "FDCPA Policies and Procedure" with "vague reference to 'steps' and 'guidance' [that the] [d]efendant takes, without actually providing any specific details as to what procedures are followed" was an inadequate showing for the bona fide error defense).

Here, Defendant submits the Premier Collect Agreement and an affidavit from Dove outlining the following "procedures": that the Premier Collect Agreement requires Life Storage "to only refer accounts to [Defendant] 'that are validly due and owing by the debtor indicated;" that, if a client of Defendant wants to add a collection fee, Defendant first "reviews the client's contract with its customers to determine if the contract contains a collection fee provision;" that, if there is a collection fee provision, Defendant will add the collection fee as long as the collection fee does not exceed the percentage that the client has agreed to pay Defendant in Defendant's contract with the client; and that Defendant "relies on its clients to determine [their own] legal rights regarding [their] contracts with their customers" and does not provide legal

advice on these contracts. (Dove Decl. ¶¶ 25 – 29, Premier Collect Agreement ¶ 4.)

Pursuant to these policies, Defendant agreed to collect the collection charge on Plaintiff's account as referred by Life Storage but, "consistent with the Premier Collect Agreement, [Defendant] limited the collection charge to 32%," which lowered it $98.94 to $98.93." (*Id.* ¶ 31.) The Court finds that the described procedures do not establish an absence of a dispute that these procedures "were reasonably adapted to avoid the specific error" of including a not-yet incurred collection charge in the Collection Letter. *See Agostino*, 2011 WL 5410667, at *4. Thus, to the extent the bona fide error defense is applicable, the Court finds that there is a genuine dispute as to whether Defendant has demonstrated all three prongs of the defense. The Court denies Defendant's Motion for Summary Judgment on this issue.

## IV.   The Reporting of the Delinquent Account to "National Credit Reporting Agencies"

Finally, Plaintiff argues that Defendant violated sections 1692e and 1692f of the FDCPA because the Collection Letter falsely stated that Plaintiff's credit report "account information [was] scheduled to be reported to the national credit reporting agencies in [Plaintiff's] creditor's name" ("the NCRA Notice"). (Pl.'s Br. at 27.) According to Plaintiff, the NCRA Notice violates §§ 1692e and 1692f in three ways: (1) Defendant could not have "accurately reported" Plaintiff's delinquent account because the Collection Letter stated the incorrect creditor; (2) the "least sophisticated creditor" would not know what the NCRAs are; and (3) even if Defendant never reported the account to the NCRA's, the Collection Letter would still violate the FDCPA as a "false threat of credit reporting." (Pl.'s Br. at 28–29.)

### A.   *Sections 1692e, e(2), e(5), e(8), and e(10)*

Plaintiff argues that the NCRA Notice violates §§ 1692e(2), e(5), e(8), and e(10). Section 1692e generally prevents a debt collector from using any "false, deceptive, or misleading

representation" when collection a debt. 15 U.S.C. § 1692e. Section 1692e(2) prohibits a debt

collector from falsely representing "the character, amount or legal status of any debt." *Id.*

§ 1692e(2). Section 1692e(5) prohibits a debt collector from making a "threat to take any action

that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). Section 1692e(8)

prohibits a debt collector from "communicating or threatening to communicate to any person

credit information which is known or which should be known to be false." *Id.* § 1692e(8). And

§ 1692e(10) prevents a debt collector from "using . . . any false representation or deceptive

means to collect or attempt to collect any debt. *Id.* § 1692e(10).

  The Court addresses Plaintiff's arguments in turn. First, the Court already determined that

the Collection Letter stated the correct creditor by listing "Uncle Bob's Self Storage." *See*

Discussion *supra* II.A.–B. Thus, the NCRA Notice did not use "false representation or deceptive

means" regarding the creditor's identity in collecting the debt. *See id.* § 1692e(10).

  Second, Plaintiff argues that the least sophisticated debtor would not know what the

NCRAs are and thus, could not dispute the debt with them. (Pl's Br. at 29.) This does not make

the Collection Letter "false, deceptive, or misleading" under § 1692e. The least sophisticated

debtor standard preserves a "quotient of reasonableness," *Wilson*, 225 F.3d at 354–55, and

assumes that "the least sophisticated debtor is bound to read collection notices in their entirety,"

*Campuzano-Burgos*, 550 F.3d at 299. The Collection Letter outlines how to dispute the debt.

(*See* Collection Letter.) Thus, the least sophisticated debtor would understand how to dispute her

debt regardless of whether she knows the exact NCRA's to which Defendant was scheduled to

report. *See Jensen*, 791 F.3d at 421–22 (requiring materiality for § 1692e claims).

  Third, Plaintiff argues that the NCRA notice violates § 1692e(5)'s prohibition on

"threat[s]" to take action not intended to be taken in debt collection actions. Plaintiff asserts that

the NCRA Notice's statement that Plaintiff's "delinquent account" is "scheduled to be reported" was a "false threat of credit reporting" because Defendant never reported it. (*See* Pl.'s Br. at 28.) She submits an affidavit saying that she "generally review[s] her credit reports annually" and has "never seen a debt on [her] credit report owed to '0728 Uncle Bobs Self Storage.'" (Miller Decl. ¶ 19.) In response, Defendant submits Dove's affidavit stating that, when the Collection Letter was sent, Plaintiff's account was scheduled to be reported and that Defendant actually reported Plaintiff's account on November 12, 2017. (Dove Decl. ¶¶ 15, 16.) Neither party submits additional evidence to demonstrate whether Defendant did or did not submit Plaintiff's account information to the NCRAs. Because both parties submitted only testimony on this issue and the Court does not assess credibility at the summary judgment stage, this is a genuinely disputed fact. *See Marino*, 358 F.3d at 247. It is Plaintiff's burden at trial to demonstrate that both that Defendant failed to credit report as outlined in the Collection Letter, and the failure to do so rises to the level of "false, deceptive, or misleading" collection practices under § 1692e.

      C.    *Section 1692f*

      Plaintiff argues that the NCRA Notice also violates § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Courts within this district have determined that § 1692f "cannot be the basis for a separate claim for conduct that is already explicitly addressed by other sections of the FDCPA." *Brannigan v. Harrison*, 2018 WL 1942520, at *12 (D.N.J. Apr. 24, 2018) (quoting *Ali v. Portfolio Recovery Assocs., LCC*, 2014 WL 1767564, at *4 (D.N.J. May 2, 2014), *on reconsideration in part*, *Ali v. Portfolio Recovery Assocs., LLC*, 2014 WL 4352316 (D.N.J. Sept. 2, 2014) (internal quotations omitted).

      Here, Plaintiff does not specify any additional conduct to show how the NCRA notice

violates § 1692f. Rather, she states generally that "the credit reporting language contained in the Collection Letter violates sections 1692e and/or 1692f of the FDCPA." (Pl.'s Br. at 28.) Because § 1692f cannot be the basis for a separate claim "when a plaintiff does not identify any misconduct beyond that which [she] assert[s] violate[s] other provisions of the FDCPA," the Court will not consider Plaintiff's § 1692f claim. *See Brannigan*, 2018 WL 1942520 at \*12; *Corson v. Accts. Receivable Mgmt., Inc.*, 2013 WL 4047577, at \*7 (D.N.J. Aug. 9, 2013). Thus, the § 1692f claim regarding the NCRA may not move forward.

In sum, the Court grants in part and denies in part both Plaintiff's and Defendant's Motions for Summary Judgment. Regarding the identity of the creditor, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. Defendant has established that there is no genuine dispute that the Collection Letter accurately identified the creditor as "0728 Uncle Bob's Self Storage."

Regarding the collection charge, the Court denies Plaintiff's Motion for Summary Judgment and finds that there are genuinely disputed facts as to whether the collection charge was "incurred" when Defendant sent the Collection Letter. The Court denies Defendant's Motion for Summary Judgment as to the bona fide error defense. There are genuinely disputed facts as to whether Defendant satisfies each prong of the defense.

Regarding the NCRA Notice, the Court denies both Plaintiff's and Defendant's Motions for Summary Judgment on the § 1692e claim with respect to whether Defendant reported Plaintiff's account to the NCRA's. This may move forward only with respect to the § 1692e claim. The Court grants Defendant's Motion for Summary Judgment regarding the NCRA Notice as it relates to the § 1692f claim, and the § 1692e(10) claim about the creditor's identity.

24

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 45) is

GRANTED IN PART and DENIED IN PART; and Defendant's Motion for Summary Judgment

(ECF No. 44) is GRANTED IN PART and DENIED IN PART. An appropriate Order will

follow.


Date: <u>March 11, 2022</u>                                     <u>/s/ Anne E. Thompson</u>
                                                        ANNE E. THOMPSON, U.S.D.J.